## TANT *et al. vs.* WIGFALL.

Courts of ordinary have general jurisdiction of the granting or revocation of letters of administration. Therefore the judgment granting letters as to a particular estate cannot be impeached collaterally on the ground that the decedent resided in a different county. Such a judgment must be attacked in the court where it was rendered. Especially so when the judgment itself recites the fact that the deceased was late of that county.

Jurisdiction. Ordinaries. Administrators and executors. Before FRANK H. MILLER., Esq., Judge *pro hac vice.* Richmond Superior Court. October Term, 1879.

Reported in the decision.

S. WARREN MAYS, for plaintiffs in error.

H. CLAY FOSTER, for defendant.

JACKSON, Chief Justice.

This case was a suit for land in Richmond superior court. Plaintiffs claim title as the immediate heirs of I. S. Tant, deceased, who, it is admitted, owned the land. Defendant claims the land by a succession of deeds running back to deeds from Hills, who sold said land as administrator of I. S. Tant, deceased, under an order of the court or ordinary of Floyd county, under which jurisdiction said letters of administration were granted to said Hills. Plaintiffs claim that said deceased resided in Richmond county at the time of his death, and that therefore said letters of administration, and all subsequent proceedings and sales under them, are void for want of jurisdiction in the court which granted them. It appears from the record that Hills, administrator of I. S. Tant, deceased, had regular letters of administration granted to him by the court of ordinary of Floyd county, and in those letters and on the face of the proceedings before that court, it was recited that he was late of said county of Floyd, deceased ; that as such administrator he administered the estate of deceased, and sold the land regularly under legal orders of that court, and after due advertisement thereof; and that the defendant purchased at the sale. So that the question is, can the plaintiffs, who are the heirs-at-law of the deceased, recover the land, both parties claiming under the intestate, the plaintiffs as heirs-at-law, and the defendant by virtue of the deed of the administrator, executed under and pursuant to said sale.

The legal question therefore is, did the title pass out of the estate of the intestate by virtue of that sale, and this turns on the question, did the administrator, Hills, have the power to sell? The sale was regular, and the only point made is, that the court of ordinary which

clothed the administrator with the letters, had no juris-
diction to do so, because Tant resided in Richmond and
not in Floyd county, when he died.  On that point the
superior court, Frank H. Miller, Esq., presiding *pro hac
vice*, ruled that the recitals on the face of the proceed-
ings in the court of ordinary of Floyd county, that the
deceased was of said county at his death, could not be
attacked collaterally in another court, and until the grant
of administration was set aside in the court which issued
the letters, the plaintiffs, heirs-at-law of the intestate, were
concluded thereby.

To this ruling the plaintiffs excepted, and this is the
issue of law before us.

Courts of ordinary in Georgia have general and exclu-
sive jurisdiction of " the granting of letters testamentary
of administration and the repeal or revocation of the
same."  Code, §331.  The court of ordinary of Floyd
county, therefore, had jurisdiction of the general subject
matter of granting letters of administration on the estate
of deceased persons; and as it has that general juris-
diction, even if the fact did not appear on the face of the
letters and proceedings, that the intestate died a resident
of Floyd county, and that this fact was made known to
the court of ordinary and judicially determined by that
court, the presumption would be that such had been done.
But when it is recited in all the proceedings before that
court, and in the letters themselves, that the deceased was
of that county at the time of his .death, it is patent that
the court passed upon that question and adjudicated it.
If so, the heirs-at-law, adult or minors, are concluded by
that judgment, just as much as they would have been had
a plea to the jurisdiction been filed, and witnesses exam-
ined thereon *pro.* and *con.*, and the plea overruled.  At
least they would be concluded in all courts except that
which rendered the judgment, where only it could be at-
tacked and set aside, or revoked, or in a court of chancery
on a proper case made.  Such seems to be the great cur

rent of authorities cited by the defendant in error, and such is unquestionably the law of this state as adjudicated by this court in 7 *Ga.*, 362. There it is directly ruled that such recitals in the letters and proceedings of the court of ordinary import verity and cannot be collaterally attacked ; and though in some cases cited by the plaintiffs in error, principles may be announced in opinions of judges of our own courts seemingly variant therefrom, we are not aware of a single case in our books where the facts made are the same as in that case and in this, any contrary decision or even *obiter dictum* is to be found. And the opinion of a judge must always be read in connection with the facts of the particular case in which it is delivered, and its meaning ascertained by reference to those facts, for his mind is upon those facts and the application of the legal principles announced thereto.

The case in the 7th differs from this only in the fact that at the time the opinion there reported was delivered, courts of ordinary were courts of limited jurisdiction, whereas now their jurisdiction is not only original and exclusive, but general, under the Code of Georgia adopted subsequently thereto. If within courts of limited jurisdiction, the recitals which gave the particular county jurisdiction were conclusive and could only be attacked in the court which granted the letters, *a fortiori* must such recitals conclude those assailing the jurisdiction, when those courts are made courts of general jurisdiction, until the letters are revoked by the court which granted them. If it be true that the residence of the intestate was in Richmond and not in Floyd county, when the court of ordinary of the latter county granted them, let the application to annul them be made in the court of ordinary of Floyd county which issued them.

Any other rule would have administration good and valid for certain purposes and in particular counties, and bad and invalid elsewhere and for other purposes. In this case, under these letters, years ago, the year's

support was set·apart for the family of the intestate and the estate generally appears to have been fully administered. Shall it be a valid administration everywhere except in the county of Richmond, where this ejectment cause is pending and in that particular cause alone, or shall it be a valid administration all over the state, or void in every county thereof? To rule the former doctrine would be to breed inextricable confusion; to hold the latter, is to produce harmony and uniformity everywhere. The first would unsettle titles until the expiration of seven years after the youngest child of a decedent had attained his majority; the last would confirm and establish them until the very court which granted the letters should set them aside, which would never be done except in a strong case and upon the most satisfactory proof. It seems to us, therefore, that even if the current of the authorities everywhere did not run with overwhelming force to sweep away the doctrine that letters of administration could be attacked collaterally in any court where they stood as a breakwater in the way of any party litigant, and if the counter-currents were as strong, principle, reason and public policy would demand the adjudication that recitals of the fact on the face of the record that the court had jurisdiction of the particular species of the general *genus*, over which its jurisdiction is undoubted, should be held conclusive everywhere until assailed and overthrown in the court which established that fact. In other words, that as courts of ordinary have jurisdiction of the subject-matter generally of estates of decedents and the grant of administration thereon, so when the court of a particular county asserted its jurisdiction thereof by recitals of the residence of the decedent therein, such record proof of its adjudication of the question of juris-·diction could only be assailed in the court which thus gave record proof of that adjudication. But be this reasoning sound or fallacious, the question was answered and adjudicated in *7 Ga.*, 362, on facts all fours with this

case, and the point is hereby re-affirmed and settled. See 2 Howard, 319; 31 Ind., 456; 16 Ohio, 455; 65 Mo., 250; 9 Leigh, 119; 62 *Ga*, 627.

Judgment affirmed.